IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

| | |
|---|---|
| AUGUST MACK ENVIRONMENTAL, INC., <br>     Plaintiff-Appellant, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTENCTION AGENCY, <br><br>     Defendant-Appellee. | Civil Action No. 1:18-CV-12 <br><br> Motion to Dismiss |

**Motion to Dismiss**

Defendant the United States Environmental Protection Agency ("EPA") hereby moves to dismiss this matter under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, Plaintiff August Mack Environmental, Inc.'s ("AME's") challenge to EPA's administrative denial of its claim for reimbursement from the federal "Superfund" fails from the outset as a matter of law.

**Introduction and Factual Background**

AME challenges a decision by EPA's Administrative Tribunal[1] rejecting its claim for payment of close to $2.7 million from the Hazardous Waste "Superfund," a congressionally-allocated fund for the cleanup of sites at which hazardous substances have been released into the environment, the use of which is strictly limited by statute and regulation (the "Superfund" or "Fund"). *See* Complaint ¶¶ 1, 21-23. AME alleges that, as a contractor to Vertellus Specialties

---

1 *See* 40 C.F.R. § 305.1 (noting that, after a Claims Official declines to pay a claim against the Superfund, a claimant may request an administrative hearing) & § 305.4 (explaining that requests for a hearing shall be referred to EPA's Chief Administrative Law Judge ("ALJ"), who may designate herself or another ALJ as the Presiding Officer, whose responsibility it is to "conduct a fair and impartial proceeding" and decide the matter).

1

Inc. ("Vertellus")—a now-defunct entity that entered into a consent decree with EPA and the West Virginia Department of Environmental Protection ("WVDEP") to clean up the Big John Salvage-Hoult Road Superfund Site (the "BJS" Site)—AME completed work worth close to $2.7 million. Complaint ¶¶ 1-7. After Vertellus declared bankruptcy, AME demanded that EPA instead pay it for work done at the BJS Site, using money from the Superfund. *Id.* ¶ 9. EPA referred that claim to its Administrative Tribunal, and on December 18, 2017, Chief ALJ Biro issued an order dismissing AME's claim with prejudice. Complaint ¶¶ 10-12 & Ex. 1 (Order on Motion to Dismiss ("Order")).

In her Order, ALJ Biro held that the governing statute, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") "requires 'preauthorization' for a company to submit a claim for payment from the Fund, August Mack did not satisfy that requirement, and August Mack is not excused from complying with that requirement." Order at 6. The Tribunal further explained that:

> Indeed . . . August Mack is prohibited from even submitting a claim, because the company did not first obtain preauthorization to do so. The statute and regulations are clear and unambiguous on this point. Thus August Mack had no basis for submitting a claim to the Fund, and this Tribunal does not have authority to award any money from the Fund to August Mack.

Order at 8.

As explained below, it is evident from the Complaint and attached Order that the ALJ's conclusions were not an "arbitrary or capricious abuse of discretion," 42 U.S.C. § 9612(b)(5), but correct as a matter of law. AME admits it did not seek or obtain preauthorization for the work in question; therefore, it cannot state a claim upon which relief can be granted under CERCLA and its implementing regulations. AME alleges that it "expected to be paid by Vertellus," which then defaulted on its obligations. Complaint ¶¶ 6-7. But there is no such

2

exception to the approval and preauthorization requirements set forth in the statute and regulations governing Superfund reimbursement.  The limited, congressionally-allocated Superfund cannot serve as an after-the-fact insurance policy each time a responsible party conducting cleanup work under CERCLA fails to pay a contractor; in any event, the governing statutory and regulatory provisions do not permit such usage.  This Court should therefore dismiss AME's challenge to EPA's decision.

<h3 style="text-align:center">Statutory and Regulatory Background</h3>

Congress enacted the CERCLA, 42 U.S.C. §§ 9601-75 (as amended), in 1980 in response to the serious environmental and public health problems posed by the disposal of hazardous substances, exemplified by sites such as Love Canal.  *See Dedham Water Co. v. Cumberland Farms Dairy, Inc*., 805 F.2d 1074, 1081 (1st Cir. 1986).  Its overriding purpose is "to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites," *Pritikin v. Dep't of Energy*, 254 F.3d 791, 794-95 (9th Cir. 2001), while at the same time "placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes."  *Wash. State Dep't of Transp. v. Wash. Natural Gas Co*., 59 F.3d 793, 799 (9th Cir. 1995).  To enable EPA to carry out these goals, Congress created a fund, known as "the Superfund,"[2] to finance federal cleanup actions.

CERCLA Section 111(a)(2) provides for reimbursement from the Superfund under certain circumstances.  Specifically, that provision allows "payment of any claim for necessary response costs incurred by any other person as a result of carrying out the national contingency

---

[2] The Superfund was originally established under section 221 of CERCLA, but in 1986 Congress repealed that provision and amended the Internal Revenue Code to the same end.  *See* 26 U.S.C. § 9507 (part of the Superfund Amendments and Reauthorization Act).

plan[3] . . . : *Provided, however*, That such costs must be approved under said plan and certified by the responsible Federal official." 42 U.S.C. § 9611(a)(2) (emphasis in original). Section 112(b)(1) of CERCLA then authorizes EPA[4] to "prescribe appropriate forms and procedures" for such claims for reimbursement from the Superfund. 42 U.S.C. § 9612(b)(1).

Implementing these provisions of CERCLA, EPA prescribed the necessary forms and procedures for claims against the Superfund in its regulations at 40 C.F.R. Part 307, which specify the steps a party must take before EPA is authorized to consider reimbursing a party from the Fund. Of particular relevance here, EPA's regulations plainly state:

> No person may submit a claim to the Fund for a response action unless that person notifies the Administrator of EPA or his designee prior to taking such response action and receives preauthorization by EPA.

40 C.F.R. § 307.22(a); *see also* 40 C.F.R. § 307.11 ("Only response actions that EPA has preauthorized are eligible for reimbursement through the claims process of section 112 of CERCLA."). "Preauthorization" is defined as "EPA's prior approval to submit a claim against the Fund for necessary response costs . . . ." 40 C.F.R. § 307.14.

EPA explained when promulgating the reimbursement regulations that "[t]he preauthorization requirement is necessary for proper Fund management, to ensure that Fund monies be available for the most urgent priorities." 50 Fed. Reg. 5862, 5873 (Feb. 12, 1985). EPA must weigh "importance of the [proposed] response activity when compared with competing demands on the Fund." 40 C.F.R. § 307.23(b)(2). The D.C. Circuit confirmed that

---

[3] The "national contingency plan" is the National Oil and Hazardous Substances Pollution Contingency Plan, or "NCP," which "provide[s] the organizational structure and procedures for preparing and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants." *See* 40 C.F.R. § 300.1. Among other things, the NCP outlines the process and requirements for undertaking response and removal actions under CERCLA.

[4] The text of the statute gives this authority to "the President," but it was delegated to the EPA Administrator in Executive Order No. 12580, 52 Fed. Reg. 2923 (Jan. 23, 1987).

important EPA role when it upheld EPA's preauthorization requirements, noting: "EPA is required to serve as the protector and distributor of scarce government resources." *State of Ohio v. EPA*, 838 F.2d 1325, 1331 (D.C. Cir. 1988).

To that end, EPA's regulations require a prospective Superfund claimant to fulfill certain requirements "before commencing a response action." 40 C.F.R. § 307.22(a). Chief among these is the submission of an "application for preauthorization." *Id.* & 40 C.F.R. § 307.14. The application must include, *inter alia*, a detailed description of the nature, quantity, and location of the hazardous substances at issue; an explanation of why the proposed response action is necessary and how it is consistent with the NCP; a proposed schedule for the work; a proposed schedule for the submission of claims against the Superfund; proposed project management and oversight procedures; and assurances of timely initiation and completion. 40 C.F.R. § 307.22(b). To the extent that EPA determines it is appropriate to proceed with the preauthorization process, EPA will approve the preauthorization application in a formal "Preauthorization Decision Document, which sets forth the terms and conditions for reimbursement." 40 C.F.R. § 307.14. The regulations plainly state that the claimant must "[o]btain the approval of the Administrator . . . *before* initiating the response action." 40 C.F.R. § 307.22(a)(3) (emphasis added). And to obtain reimbursement from the Superfund, the claimant must show that the claimed costs were "incurred for activities within the scope of EPA's preauthorization." 40 C.F.R. § 307.21(b)(2).

As discussed below, it is evident from the Complaint that AME fulfilled none of these regulatory prerequisites, and therefore does not meet the statutory prerequisite for bringing a Superfund claim: that the claimed costs be "approved under the [national contingency plan ("NCP")] and certified by the responsible Federal official." 42 U.S.C. § 9611(a)(2).

**Standard of Review**

AME brings suit under section 112(b)(5) of CERCLA, which allows this Court to review EPA's final decisions on claims against the Superfund that arise in this district. 42 U.S.C. § 9612(b)(5). The statute provides that, in such an action, EPA's decision "shall be considered binding and conclusive, and shall not be overturned except for arbitrary or capricious abuse of discretion." *Id.*

"Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Susko v. City of Weirton*, 2009 WL 5067456 at *2 (N.D. W.Va. 2009) (Rule 12(b)(6) motions are granted where "the allegations raised in the complaint clearly demonstrate that plaintiff does not have a claim"). When considering whether the plaintiff has stated a plausible claim, the court must "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Richardson v. Williams*, 2015 WL 3937004, at *3 (N.D. W.Va. June 26, 2015) ("the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, 'so long as they are integral to the complaint and authentic'") (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)), *aff'd*, 627 F. App'x 279 (4th Cir. 2016).

While the court "must . . . accept all factual allegations in the complaint as true," *Tellabs*, 551 U.S. at 322, it "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006); *accord Iqbal*, 556 U.S. at 678 ("we are not bound to accept as true a legal conclusion couched as a factual allegation") (internal

6

quotation omitted).  Here, even accepting the truth of AME's factual allegations—for purposes of this Motion only—AME's Complaint, which incorporates by attachment the challenged EPA Order, fails to state a plausible claim for relief for the reasons set forth below.

## Argument

AME challenges the EPA Tribunal's decision as an arbitrary and capricious abuse of discretion, and asks the Court to vacate that decision.  Complaint ¶ 1 & Prayer for Relief.  The United States agrees this Court has jurisdiction to review the decision under 42 U.S.C. § 9612(b)(5).  But a review of AME's Complaint makes it clear that the primary factual ground for the ALJ's decision—that AME did not apply for or receive EPA's preauthorization to perform the work and incur the costs for which it now seeks reimbursement—is not disputed.  In light of that fact, the ALJ correctly concluded, as a matter of law, that AME is not entitled to reimbursement from the Superfund.  That conclusion, which flows directly from the text of the governing statute and its implementing regulations, is well-grounded and not an "arbitrary and capricious abuse of discretion."  42 U.S.C. § 9612(b)(5).  Therefore, the Court should dismiss the Complaint for failing to state a claim upon which relief can be granted.

I.  The Tribunal correctly held that AME cannot claim for reimbursement from the Superfund because it did not fulfill the statutory and regulatory prerequisites.

It is evident from the Complaint that AME has not fulfilled the statutory and regulatory prerequisites for reimbursement from the Superfund; namely, that its claims be approved and certified by EPA, as required by Section 111 of CERCLA, through the preauthorization procedures set forth in EPA's regulations.  Thus, the Court should uphold the ALJ's decision and dismiss this appeal for failing to state a plausible claim for relief.

### A. *Preauthorization is required by CERCLA and EPA's regulations.*

As noted above, CERCLA Section 111(a)(2) provides for reimbursement from the Superfund, but with the important caveat that "such costs must be approved under [the NCP] and certification by the responsible Federal official." 42 U.S.C. § 9611(a)(2). Section 112(b)(1) of CERCLA authorizes EPA to "prescribe appropriate forms and procedures" for claims under Section 111. 42 U.S.C. § 9612(b)(1); *see also State of Ohio*, 838 F.2d at 1330 (noting that, while the Section 111 "proviso" requiring approval under the NCP and certification "is not restated in CERCLA § 112, that section by its terms refers back to CERCLA § 111 for definition of claims eligible for Fund reimbursement").

EPA's implementing regulations require a prospective Superfund claimant to apply for and obtain "preauthorization" to perform the cleanup work at issue and to submit the associated costs for that work for reimbursement from the Superfund. Specifically, 40 C.F.R. § 307.21(b) establishes four prerequisites for claiming against the Superfund, all of which must be met before EPA may consider costs to be eligible for reimbursement from the Fund:

    1) The response action is preauthorized by EPA pursuant to § 307.22;

    2) The costs incurred are for activities within the scope of EPA's preauthorization;

    3) The response action is conducted in a manner consistent with the NCP; and

    4) The costs incurred are necessary pursuant to § 307.11.[5]

EPA's regulations further provide that "No person may submit a claim to the Fund for a response action unless that person notifies the Administrator of EPA . . . prior to taking such response

---

[5] The EPA Tribunal did not address the latter two prerequisites because AME plainly did not satisfy the first two prerequisites. If this Court, based upon the relevant standard of review, were to disagree with the Tribunal's conclusions regarding preauthorization, it should remand to the Tribunal so that EPA can assess AME's compliance with the remaining regulatory requirements, *inter alia*.

action and receives preauthorization by EPA." 40 C.F.R. § 307.22(a). The NCP similarly confirms that advance notice and preauthorization are prerequisites for a claim against the Fund. 40 C.F.R. § 300.700(d)(2) ("In order to be reimbursed by the Fund, an eligible person must notify the Administrator of EPA or designee prior to taking a response action and receive prior approval, i.e., 'preauthorization,' for such action.").[6]

This regulatory language establishes a bright-line test for claims against the Superfund. These requirements are not mere technicalities; rather, they serve two important purposes.

First, the prescribed procedures safeguard the limited monies in the Superfund (comprised mainly of congressionally-appropriated taxpayer dollars, augmented by costs EPA recovers from responsible parties under CERCLA's cost recovery provision[7]), ensuring that the Fund is used only for the "most urgent [cleanup] priorities." *See State of Ohio, supra.* That objective is consistent with Congress' instruction to EPA in Section 112 of CERCLA, 42 U.S.C. § 9612, to prescribe a process for approving and certifying Superfund claims "under the [NCP]," which places meaningful conditions on the work undertaken and associated costs claimed by persons performing cleanups. *See* 42 U.S.C. § 9607(a)(4)(A)-(B) (making consistency with the NCP a requirement for cost recovery). The regulatory preauthorization process gives EPA the

---

[6] *See also Artesian Water Co. v. Government of New Castle County*, 605 F. Supp. 1348, 1358 (D. Del. 1985) (noting that the NCP "tracks CERCLA's requirement that those seeking reimbursement of response costs from the Superfund must have procured prior governmental approval for their expenditures").

[7] *See* 42 U.S.C. § 9607(a) (authorizing EPA to recover cleanup costs it incurs that are not inconsistent with the National Contingency Plan). Where possible, EPA seeks to have responsible parties themselves conduct and fund the cleanup. Here, as the ALJ explained, the responsible parties at the BJS Site (Vertellus, Exxon, and CBS) agreed to provide certain direct funding for the cleanup, and two trust funds were established to that end. Order at 2. Vertellus also obtained a letter of credit to help fund the cleanup. *Id.* But access to those funds is governed by the terms of the consent decree that established them. AME cannot recover them here under 42 U.S.C. § 9612(b)(5), which only authorizes appeal of EPA decisions on claims against the Superfund. *See* Order at 11.

necessary opportunity to evaluate the proposed work—before it is undertaken—against the requirements of the NCP, and then inform prospective claimants whether and under what conditions the costs of such work can be paid from the Superfund.

Second, the preauthorization process allows EPA to adjudicate claims in a transparent and predictable manner, giving responsible parties and their contractors much-needed certainty by outlining a very specific procedure for claims submission and recovery. Where a claimant has obtained preauthorization, performed work within the scope thereof (as defined in the Preauthorization Decision Document), and met the remaining regulatory requirements, it is eligible for payment to the extent that monies are available in the Fund. *See State of Ohio*, 838 F.2d at 1331 ("Not only are there obviously dollar limits to the Fund, but claims are 'valid' only to the extent of available funds . . . without the preauthorization procedure, private persons would proceed at the peril of their claim ultimately being disapproved or being invalid by reason of the exhaustion of available funds.").

Conversely, a party that does not follow those clearly identified procedures—that never seeks preauthorization, much less performs work within the scope and under the conditions outlined in a resulting Preauthorization Decision Document—has no reason to believe that it is entitled to be paid from the Superfund. Neither the statute nor EPA's regulations identify exceptions to these claim requirements, and thus EPA has no authority to approve Superfund reimbursement where a party has not sought or obtained preauthorization in accordance with the regulatory scheme. *See generally* Order at 3-5. Indeed, absent preauthorization, EPA has no mechanism for "approv[ing]" and "certif[ying]" the claimed costs as required by Congress in CERCLA Section 111(a)(2), 42 U.S.C. § 9611(a)(2).

> B. *AME admits that it did not seek or obtain preauthorization pursuant to the prescribed regulatory process.*

It is evident from the Complaint that AME did not comply with the statutory and regulatory requirements for reimbursement from the Superfund outlined above.

In the Complaint, AME alleges that, "from October 2012 . . . to May 2016," it did work at the BJS Site as a contractor for Vertellus, which had entered into a consent decree with EPA requiring it to perform cleanup activities. Complaint ¶¶ 3, 6-7. AME admits that it expected to be paid for that work by Vertellus. *Id.* ¶ 7. AME alleges that, after Vertullus "went broke," AME made claims against Vertullus in bankruptcy. *Id.* ¶ 7. AME also states that it "requested payment from CBS and Exxon." *Id.* ¶ 8. When these attempts to obtain payment failed, AME states that, "[f]inally, in January 2017," it "requested reimbursement from EPA." *Id.* ¶ 9.

Notably, AME does <u>not</u> allege that it ever sought or obtained preauthorization from EPA to submit a claim against the Superfund. Rather, the chronology of events set forth in the Complaint makes clear that AME did not seek payment from EPA until almost a year after it finished conducting work at the BJS Site. Thus, AME plainly did not fulfill the requirements of 40 C.F.R. § 307.21(b), which (as described above) requires a Superfund claimant to apply for <u>pre</u>authorization to conduct work for which it desires reimbursement; obtain a Preauthorization Decision Document before doing the work; and then carry out the work in accordance with the conditions set forth in that document. And if that regulatory provision was not sufficiently clear as to when a claimant must engage with EPA in order to be eligible for reimbursement from the Superfund, the following provision certainly is: "No person may submit a claim to the Fund . . . unless that person notifies the Administrator of EPA . . . *prior* to taking such response action and receives preauthorization by EPA." 40 C.F.R § 307.22(a) (emphasis added).

Thus, it is plain from the Complaint that AME did not comply with EPA's regulations governing reimbursement from the Superfund, and therefore it did not fulfill the corresponding statutory requirement: that the costs claimed "be approved under [the NCP] and certified by the responsible Federal official." 42 U.S.C. § 9611(a)(2).

Rather, AME seeks an exception to the statutory and regulatory requirements because of an unexpected event: Vertellus' bankruptcy. But no such exception exists. While this may seem to leave AME in an unfair position, its position is no different from that of any other contractor that has the misfortune to have been employed by an entity that went bankrupt before paying its bills, or to have otherwise been allegedly shortchanged. The federal government cannot serve as a guarantor in such situations, and there is nothing in CERCLA to suggest that Congress so intended. Moreover, there is nothing in CERCLA or its implementing regulations that would allow (much less require) the government to cover AME's costs here simply because the work in question was pursuant to an EPA consent decree. *See* 40 C.F.R. 307.22(j): "Unless otherwise specified and agreed to by EPA, the terms, provisions, or requirements of a…Consent Decree…do not constitute preauthorization to present a claim to the Fund."[8] The ALJ's decision dismissing AME's claim against the Superfund therefore was correct as a matter of law, and not an arbitrary and capricious abuse of discretion.[9]

---

[8] Moreover, AME was not even a party to the Consent Decree governing cleanup at the BJS Site, and so obviously cannot invoke that document to support its claim here.

[9] As further support for her decision, the ALJ also noted that AME's claim was barred under Section 112(a) of CERCLA, 42 U.S.C. § 9612(a) ("[n]o claim against the fund may be approved or certified during the pendency of an action by the claimant in court to recover the costs which are the subject of the claim"), because AME was, at that time, simultaneously pursuing a claim against Vertellus in bankruptcy court. Although the United States understands that AME's bankruptcy claim is no longer pending (despite the fact that the Complaint indicates otherwise, see Complaint ¶ 7), the applicability of section 112(a) of CERCLA was not the primary basis for the Tribunal's holding. Rather, the Tribunal's decision was founded on its determination that AME's failure to seek and receive preauthorization bars it from asserting a claim against the

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court uphold the EPA Tribunal's decision and dismiss AME's claim. AME cannot show that it has a right to payment from the Superfund and so it fails to state a claim upon which relief can be granted.

Respectfully submitted,

By:   JEFFREY H. WOOD
Acting Assistant Attorney General

s/ Amanda Shafer Berman
AMANDA SHAFER BERMAN
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-1950 (phone)
(202) 514-8865 (fax)
Email: amanda.berman@usdoj.gov

WILLIAM J. POWELL
UNITED STATES
ATTORNEY

/s/ Helen Campbell Altmeyer
Assistant United States
Attorney WV Bar # 117
U.S. Attorney's Office
P.O. Box 591 Wheeling,
WV 26003
Phone: (304) 234-0100
Fax:(304) 234-0112
Helen.Altmeyer@usdoj.gov

---

Fund, which is a sufficient and independent basis for upholding the ALJ's Order.

13

CERTIFICATE OF SERVICE

I, Helen Campbell Altmeyer, hereby certify that on May 11, 2018, I electronically filed the foregoing MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system.

WILLIAM J. POWELL
UNITED STATES
ATTORNEY

/s/ Helen Campbell Altmeyer
Assistant United States Attorney
WV Bar # 117
U.S. Attorney's Office
P.O. Box 591
Wheeling, WV 26003
Phone: 304-234-0100
Fax:    304-234-0112
Helen.Altmeyer@usdoj.gov