```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                      CLARKSBURG
```

**AUGUST MACK ENVIRONMENTAL, INC.,**

    **Plaintiff,**

v.                                           Civ. Action No. 1:18-CV-12
                                                    (Judge Kleeh)

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,**

    **Defendant.**

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT [ECF NO. 30]**

Pending before the Court is a Motion to Dismiss the Amended Complaint [ECF No. 30]. The Motion is fully briefed and ripe for consideration. For the reasons discussed below, the Court grants the Motion.

## I. BACKGROUND

The Plaintiff, August Mack Environmental, Inc. ("AME"), brought this action against the Defendant, the United States Environmental Protection Agency ("EPA"), seeking to vacate an administrative order from EPA. Around 2000, the Big John's Salvage-Hoult Road Superfund Site in Fairmont, West Virginia (the "BJS Site"), which had been tainted over time with contaminated tar and other hazardous substances, became eligible

to receive Superfund[1] money to help finance the cleanup. ECF No. 23 at ¶ 7. EPA identified Exxon Mobil Corporation ("Exxon"), Vertellus Specialties, Inc. ("Vertellus"), and CBS Corporation ("CBS") as "potentially responsible parties" ("PRPs"). ECF No. 31 at 2. The PRPs entered into a Consent Decree with EPA and the West Virginia Department of Environmental Protection, agreeing to perform cleanup work selected and approved by EPA.[2] ECF No. 23 at ¶ 8. Vertellus, as the "Performing Defendant," was required to perform the cleanup and selected AME as the "Supervising Contractor" to do so. Id. ¶ 10.

Together, the PRPs provided EPA with nearly $37 million in cash and financial assurances to be used to clean up the site. Id. ¶ 9. This money served as a "performance guarantee"; under the terms of the Consent Decree, EPA could access these funds if Vertellus failed to meet its cleanup obligations. ECF No. 23-1 at ¶¶ 29, 33. If Vertellus ceased performing the cleanup work or EPA determined that Vertellus was "seriously or repeatedly deficient" in doing so, EPA could issue a "Work Takeover Notice," which would "trigger EPA's right to receive the benefit of" the performance guarantee funds and allow EPA to complete

---

[1] Congress created a trust fund, known as the "Superfund," to be "used to clean up hazardous substance releases and for certain other purposes." Exxon Corp. v. Hunt, 475 U.S. 355, 355 (1986).
[2] A copy of the Consent Decree is located at ECF No. 23-1 in CM/ECF (Exhibit A).

the work itself. Id. at ¶ 33, 72.

AME, as a contractor of Vertellus, performed cleanup at the BJS Site from October 2012 to May 2016, spending nearly $2.7 million in its efforts. ECF No. 23 at ¶¶ 1, 11. AME expected to be paid by Vertellus or from the $37 million in site-specific funding held by EPA. Id. ¶ 11. In May 2016, Vertellus filed for Chapter 11 bankruptcy, and EPA initiated a work takeover pursuant to the Consent Decree. Id. ¶¶ 12-13. The performance guarantee funds were then transferred to EPA and placed in the BJS Site Special Account. Id. ¶ 14.

After Vertellus filed for bankruptcy, AME attempted to recover its $2.7 million for which it has never been reimbursed. AME unsuccessfully filed claims against Vertellus in bankruptcy court. Id. ¶ 15. It also requested money from CBS, Exxon, and EPA, all of whom rejected its requests. Id. ¶¶ 16-18.

AME then requested a hearing, and its request was submitted to a tribunal of EPA administrative law judges ("ALJ"). Id. ¶¶ 19-20. EPA filed a motion to dismiss, and the ALJ granted it, dismissing AME's request with prejudice. Id. ¶ 21. The ALJ wrote that the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") requires "preauthorization" for a company to submit a claim for payment from the Superfund. ECF No. 23-4 at 6. AME did not satisfy that requirement, and AME is

not excused from satisfying it. Id. The ALJ further wrote that EPA could not reimburse AME from the site-specific guarantee funds because they are "governed by the terms of the Consent Decree, an agreement to which August Mack is not a party and that is under the jurisdiction of" the United States District Court for the Northern District of West Virginia. Id. at 11.

The ALJ indicated that its order was "the final administrative decision of the Agency" and noted that it may be appealed in this Court. ECF No. 23 at ¶ 21. AME now asks the Court to do the following: vacate the ALJ's order; order EPA to reimburse AME for its past response costs in the amount of $2,661,150.98, plus prejudgment interest; and order EPA to pay all of AME's attorneys' fees and costs. Id. at 7. Alternatively, AME asks the Court to remand the case to the agency with instructions to process AME's requests for reimbursement under appropriate standards and procedure and to award AME all further relief that is just and proper. Id.

## II.  PROCEDURAL HISTORY

AME filed its Amended Complaint on June 1, 2018. ECF No. 23. On June 8, 2018, United States District Judge Irene M. Keeley continued the Scheduling Conference until further notice. ECF No. 26. EPA filed its Motion to Dismiss on June 27, 2018.

ECF No. 30. The case was transferred to United States District Judge Thomas S. Kleeh on December 1, 2018. ECF No. 40.

### III. STANDARD OF REVIEW

EPA's decision "shall not be overturned except for arbitrary or capricious abuse of discretion." 42 U.S.C. § 9612(b)(5). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT [ECF NO. 30]**

a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). "[T]he Court may consider documents attached to the Complaint, as well as those attached to the motion to dismiss, 'so long as they are integral to the complaint and authentic.'" Richardson v. Williams, No. 3:14-cv-129, 2015 WL 3937004, at *3 (N.D.W. Va. June 26, 2015) (quoting Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007), aff'd, 627 F. App'x 279 (4th Cir. 2016)).

## IV. DISCUSSION

EPA moves to dismiss AME's claim because AME did not fulfill the statutory and regulatory prerequisites for Superfund reimbursement. Further, EPA argues, AME is not a party to the Consent Decree and is not entitled to payment from site-specific funds. In response, AME argues that EPA's preauthorization process is obsolete, that AME substantially complied with the remaining elements of the Superfund claim process, and that EPA's refusal to consider the site-specific funds available to it was arbitrary and capricious.

### A. AME May Not Recover from the Superfund

The ALJ's decision that AME cannot recover from the Superfund was not arbitrary and capricious. CERCLA provides mechanisms intended to combat the release of hazardous wastes,

"placing the ultimate financial responsibility for cleanup on those responsible" for them. Wash. State Dep't of Transp. v. Wash. Nat. Gas Go., 59 F.3d 793, 799 (9th Cir. 1995). Congress created a "Superfund" to help finance the response costs, and CERCLA allows reimbursement from the Superfund in certain circumstances.

Section 111(a)(2) of CERCLA provides for "payment of any claim for necessary response costs incurred by another person as a result of carrying out the national contingency plan,"[3] provided that the "costs must be **approved** under said plan and certified by the responsible Federal official." 42 U.S.C. § 9611(a)(2) (emphasis added). Section 112(b)(1) authorizes the President[4] to "prescribe appropriate forms and procedures" for reimbursement claims from the Superfund. Id. § 9612(b)(1).

With respect to these procedures, EPA has issued the following regulation: "No person may submit a claim to the Fund for a response action unless that person **notifies** the

---

[3] The "national contingency plan" refers to the National Oil and Hazardous Substances Pollution Contingency Plan, which "provide[s] the organizational structure and procedures for preparing for and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants." 40 C.F.R. § 300.1.

[4] As EPA points out in its Memorandum in Support of its Motion to Dismiss, "[t]he text of the statute gives this authority to 'the President,' but it was delegated to the EPA Administrator in Executive Order No. 12580, 52 Fed. Reg. 2923 (Jan. 23, 1987)." ECF No. 31 at 6 n.5.

Administrator of EPA or his designee **prior** to taking such response action and receives **preauthorization** by EPA." 40 C.F.R. § 307.22(a) (emphasis added). The regulations also state that "[o]nly response actions that EPA has preauthorized are eligible for reimbursement through the claims process of section 112 of CERCLA." Id. § 307.11(a). "Preauthorization" is defined as "EPA's prior approval to submit a claim against the Fund for necessary response costs incurred as a result of carrying out the NCP." Id. § 307.14.

To obtain EPA's prior approval, a claimant must submit an application for preauthorization before commencing a response action. Id. §§ 307.14, 307.22(a). Further, the claimant must show that the claimed costs were "incurred for activities within the scope of EPA's preauthorization." Id. § 307.21(b)(2).

Here, it is undisputed that AME did not obtain preauthorization and, thus, did not fulfill the statutory and regulatory requirements. In fact, AME admits that it expected to be paid by Vertellus or the site-specific fund, rather than by the Superfund. ECF No. 23 at ¶ 11. AME is suggesting in its Response and Sur-Reply, however, that the Court should waive the preauthorization requirement because the procedure is obsolete and because AME substantially complied with the rest of the requirements.

AME first points out that Form 2075-3, EPA's preauthorization application form, expired in 1994.[5] ECF No. 33 at 5. AME believes that it may "escape penalties" because EPA has not complied with the Paperwork Reduction Act ("PRA"), which requires that its preauthorization forms display a current Office of Management and Budget number. Id. at 7–9. AME argues that EPA cannot enforce compliance with its regulations in light of PRA violations.[6] Id. at 9. Regardless, AME argues that it substantially complied with the requirements and policy of the preauthorization scheme and that EPA supports a substantial compliance approach to costs incurred under the NCP. Id. at 12. AME emphasizes that it worked "hand-in-glove" with EPA and that EPA authorized and approved its work. Id. at 15.

To AME's arguments regarding the PRA, EPA argues that the PRA does not create a right of action and can serve only as a defense. ECF No. 36 at 9. Additionally, AME was not subject to a penalty for failing to submit the form; EPA merely declined to pay AME from the Superfund. Id. As to the substantial compliance argument, EPA contends that its approving of work AME performed pursuant to a Consent Decree does not constitute

---

[5] AME attached the form at ECF No. 33-1 in CM/ECF. It also argues that EPA declared the form obsolete in a "Form Catalog" published in 1997. See ECF No. 33-2.
[6] Further, AME writes, "neither the EPA office to which the application is to be submitted nor the physical address to which the application is to be sent exists." ECF No. 33 at 10.

preauthorization. Id. at 12. Further, the doctrine of substantial compliance applies only to the question of whether the cleanup work was NCP compliant, not to the broader question of whether a claimant has fulfilled other statutory/regulatory requirements for reimbursement.[7] Id. at 14.

In light of the clear statutory and regulatory requirements a claimant must meet before receiving Superfund reimbursement, the Court finds that the ALJ's decision was not arbitrary and capricious, and dismissal is appropriate. AME failed to seek preauthorization as required by the governing statute regulations, and it has not demonstrated that it is exempt from doing so. As will be discussed below, nothing under the Consent Decree constitutes preauthorization, and nothing in the Consent Decree creates rights in non-parties. It is irrelevant that EPA authorized and supervised AME's work. AME's substantial compliance argument has no merit because this is not a mere technical oversight on AME's behalf; it is an outright failure to attempt to comply with clear federal regulations. This Court can neither ignore nor revise those regulatory requirements. AME may not recover from the Superfund.

---

[7] EPA argues that this point is clearly made in the cases AME cites in its Response.

### B. AME May Not Recover from the Site-Specific Fund

The ALJ's decision that AME cannot recover from the site-specific funds was not arbitrary and capricious. The ALJ correctly noted that in analyzing a claim for Superfund reimbursement, it did not have jurisdiction to award site-specific funding and that the proper jurisdiction for the question was in this Court.[8]

The Consent Decree specifically states that "[n]othing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree." ECF No. 23-1 at ¶ 79. The Consent Decree lists the parties bound by it: Vertellus, CBS, and Exxon. Id. at 8, 12-13. AME is neither a party to the Consent Decree nor a third-party beneficiary to it. As such, no rights for AME are created under the agreement. As EPA stated in its Memorandum, "nothing in that document provides for the payment or reimbursement of third-party contractors employed by the parties, let alone from the limited funding provided by the PRPs under the Consent Decree." ECF No. 31 at 17.

---

[8] The Consent Decree provides that United States District Court for the Northern District of West Virginia "retains jurisdiction over [ ] the subject matter of this Consent Decree . . . for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate . . . ." ECF No. 23-1 at ¶ 92.

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT [ECF NO. 30]**

EPA can only use the funds as expressly contemplated by the Consent Decree: to complete the currently-unfinished cleanup of the BJS Site. The Consent Decree states that "EPA shall have immediate access to resources guaranteed under any such performance guarantee(s) . . . as needed to continue and complete the Work assumed by EPA under the Work Takeover." ECF No. 23-1 at ¶ 33. Contrary to AME's allegations, the ALJ did consider its request for reimbursement from the site-specific fund, and it rejected it. The ALJ's decision was not arbitrary and capricious as to this issue.

## V.   CONCLUSION

For the reasons stated above, the ALJ's decision was not arbitrary and capricious. EPA's Motion to Dismiss [ECF No. 30] is **GRANTED**. The Court **ORDERS** that this action be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: July 11, 2019.

*Tom S Kleeh* _____

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE